**10 CV 1136**

Paul J. Reilly (PR:0317)
BAKER BOTTS L.L.P.
30 Rockefeller Plaza
New York. New York 10112-4498
(212) 408-2500
*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

WATERKEEPER ALLIANCE. INC.,

Plaintiff,

v.

SPIRIT OF UTAH WILDERNESS. INC.,
d/b/a GREAT SALT LAKEKEEPER, or
GREAT SALT LAKE WATER KEEPERS.

Defendant.

Civil Action No._____

**COMPLAINT**

Plaintiff Waterkeeper Alliance. Inc. ("Plaintiff" or "Waterkeeper Alliance"), by

its attorneys. Baker Botts L.L.P., for its complaint against the above-named Defendant Spirit of

Utah Wilderness, Inc. ("Defendant" or "SUW"), alleges as follows:

## SUMMARY OF THE COMPLAINT

1.      This is an action for trademark infringement, unfair competition, and

related New York state law claims.  On information and belief, Defendant has blatantly, willfully

and repeatedly infringed Waterkeeper Alliance's trademark rights in its marks LAKEKEEPER.

which is the subject of U.S. Application Serial No. 77/928.754, and WATERKEEPER, which is

the subject of U.S. Trademark Registration No. 2.579.004. both for promoting public awareness of the need for the conservation of natural water resources.  Defendant's business and/or services are not sponsored. authorized or approved by Waterkeeper Alliance.

   2. For several years prior to Defendant's blatant tortious conduct. Mr. Jeff Salt ("Mr. Salt") had been the Executive Director of Great Salt Lake Audubon ("GSLA"), which was an authorized Waterkeeper Alliance member organization.  Pursuant to a license agreement executed by Waterkeeper Alliance and GSLA on January 30. 2004 ("License Agreement").  Waterkeeper Alliance granted GSLA a license to use the LAKEKEEPER mark.  A copy of the License Agreement is attached hereto as Exhibit A.  As part of the membership services. GSLA received a limited license to use Waterkeeper Alliance's LAKEKEEPER mark and as part of the combination GREAT SALT LAKEKEEPER in connection with its environmental awareness business and/or services.  Hereinafter the foregoing marks. including those applied for. registered and/or used in commerce, LAKEKEEPER. WATERKEEPER. and GREAT SALT LAKEKEEPER are referred individually and/or collectively as the "WATERKEEPER Marks." Mr. Salt subsequently joined Defendant as its Executive Director. and SUW continued to use the LAKEKEEPER mark and maintain the GREAT SALT LAKEKEEPER environmental conservation program with Waterkeeper Alliance's authorization and approval.

   3. Although Waterkeeper Alliance did not execute a new written license agreement with Defendant. the License Agreement was effectively assigned to there is Defendant on or about August 2004. Waterkeeper Alliance. at the request of Mr. Salt. authorized Defendant to use under license the WATERKEEPER Marks and maintain the GREAT SALT LAKEKEEPER environmental conservation program in accordance with

Plaintiff's quality standards.  In conformity with the terms of the License Agreement, Defendant

paid annual licensing fees to Waterkeeper Alliance.  Copies of the invoices sent to Defendant

and checks issued by Defendant are attached hereto as Exhibit B.  As a result, a valid trademark

license authorizing SUW to use the WATERKEEPER Marks was in effect from August 2004

through December 2008.

      4.    In November 2008 however, Waterkeeper Alliance revoked Defendant's

license and membership based on its failure to comply with Waterkeeper Alliance's quality

standards.  Consequently, Waterkeeper Alliance requested that Defendant cease using the

WATERKEEPER Marks.  Defendant refused to comply with the demands of Waterkeeper

Alliance in all respects.  On information and belief, SUW has intentionally, willfully and

blatantly infringed Waterkeeper Alliance's WATERKEEPER Marks by Defendant's continued

and unauthorized use of the name and mark GREAT SALT LAKEKEEPER and adoption of the

name and mark GREAT SALT LAKE WATER KEEPERS, thereby causing a likelihood of

confusion as to the source of Defendant's business and/or services, or that Defendant's business

and/or services are sponsored, approved or affiliated with Waterkeeper Alliance when they are

not.

      5.    Waterkeeper Alliance's claims against Defendant arise under the U.S.

Trademark Act (Lanham Act of 1946), 15 U.S.C. §§ 1041 et seq. (as amended), and New York

statutory and common law.  As a result of Defendant's willful infringement of Waterkeeper

Alliance's trademarks, there is a significant likelihood that consumers will be confused, deceived

or mistaken as to the source of the business and/or services SUW is providing, which is causing

and will continue to cause irreparable harm and injury to Waterkeeper Alliance, its association,

business. reputation and intellectual property. Waterkeeper Alliance. therefore. seeks a permanent injunction. and the recovery of actual damages. treble damages. profits. costs. attorneys' fees, punitive damages and other relief as set forth more fully below.

## THE PARTIES

6.     Waterkeeper Alliance. Inc. ("Plaintiff" or "Waterkeeper Alliance"). a New York not-for-profit corporation. having its address at 50 S. Buckhout Street. Suite 302. Irvington. New York 10533, is an organization that focuses on raising awareness for. and support for. waterways and their respective communities worldwide.

7.     On information and belief. Defendant Spirit of Utah Wilderness. Inc. ("Defendant" or "SUW"), a Utah non-profit corporation. doing business as Great Salt Lakekeeper and/or Great Salt Lake Water Keepers. and having its address at 723 East Lisonbee Avenue. Salt Lake City, Utah 84106. is an organization that purportedly focuses on raising awareness for, and support for. the Great Salt Lake watershed.  On information and belief. Mr. Jeff Salt ("Mr. Salt") serves as the Executive Director of and registered agent for Defendant.  On information and belief. Mr. Salt is the founder of SUW and dominates and controls SUW. including its day to day operations.  On information and belief. SUW operates or has operated out of Mr. Salt's home.  On information and belief. SUW exercises no business discretion independent of Mr. Salt's authority. wishes and control.  On information and belief. Mr. Salt is legally identified with SUW.

## SUBJECT MATTER JURISDICTION

8.     The First and Second Causes of Action arise under the United States Trademark ("Lanham") Act of 1946. as amended. 15 U.S.C. §§ 1051-1127.  Subject matter

jurisdiction in this Court over these causes of action is proper pursuant to Section 39 of the Lanham Act. 15 U.S.C. §§ 1121 and 1126. and 28 U.S.C. §§ 1331 and 1338.

9.    The Third, Fourth and Fifth Causes of Action arise under New York common law. and are substantially based upon the same operative facts as the First and Second Causes of Action.  Subject matter jurisdiction in this Court over these causes of action is proper on the basis of 28 U.S.C. § 1338(b) and on the basis of supplemental jurisdiction.

10.    The Court also has subject matter jurisdiction over Waterkeeper Alliance's claims pursuant to 28 U.S.C. § 1332 because the parties are of diverse citizenship and the amount in controversy exceeds the jurisdictional minimum.

## PERSONAL JURISDICTION AND VENUE

11.    Personal jurisdiction over Defendant is proper under Sections 301-302 of the State of New York's Civil Practice Law & Rules, pursuant to Rule 4 of the Federal Rules of Civil Procedure and under the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

12.    On information and belief. this Court has personal jurisdiction over the Defendant.  On information and belief. SUW. through its Executive Director. Mr. Salt. transacted business within the state by contracting with Waterkeeper Alliance for purposes of securing a license to use the WATERKEEPER Marks and paying license fees to Waterkeeper Alliance in New York in accordance with the license.  Plaintiff's causes of action asserted herein arises from or relate to such business transactions.  Thus. Defendant regularly and systematically transacted business in this district.  Further. the terms of the License Agreement—which were known to and accepted by SUW and its Executive Director. Mr. Salt. when Mr. Salt requested a

license from Waterkeeper Alliance on behalf of SUW—state that any and all disputes between the parties arising from the license shall be subject to New York jurisdiction and that parties submit to personal jurisdiction in New York.

13. Specifically, on information and belief, SUW, through its Executive Director, Mr. Salt, effectively entered into the License Agreement with Waterkeeper Alliance, the terms of which expressly state that "[a]ny action, suit or proceeding commenced by any party hereto against any other party hereto shall be brought in the United States District Court for the Southern District of New York . . . . each party consenting to the jurisdiction of each such court . . . .In any such action, suit or proceeding, each party waives any claims that such court is not a convenient forum." Exhibit A, ¶ 12.

14. In addition, Defendant engaged in tortious conduct outside the state of New York, namely, the continued, unauthorized use of the WATERKEEPER Marks. Plaintiff's claims arise from such tortious acts which have caused injury to Waterkeeper Alliance within this jurisdiction, and SUW should have reasonably expected that its infringing use of the WATERKEEPER Marks would have consequences in New York. On information and belief, Defendant derives a substantial portion of its revenue from or relating to interstate commerce.

15. Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and (c).

## STATEMENT OF FACTS

16. Waterkeeper Alliance is an international grassroots advocacy organization that champions clean water and strong communities by supporting a network of local WATERKEEPER programs. Waterkeeper Alliance holds each local WATERKEEPER program

to basic quality standards to ensure that the WATERKEEPER program is able to adequately protect the relevant community, ecosystem and water quality. Waterkeeper Alliance approves new WATERKEEPER programs, licenses the use of the WATERKEEPER family of trademarks, represents individual Waterkeeper programs on national issues, and serves as a means for connecting all WATERKEEPER programs. As of January 2010, Waterkeeper Alliance supports nearly 200 WATERKEEPER programs on six continents.

17.   As a result of its efforts, Waterkeeper Alliance has become well and favorably known to members of the general public and the environmental community for quality environmental advocacy services in local communities.

18.   Waterkeeper Alliance, itself or though its predecessors in interest, owns and has continuously used the mark LAKEKEEPER since 2002 and WATERKEEPER since 1999 in connection with association services, namely promoting the conservation of natural resources and interests of natural resources conservationists. Waterkeeper Alliance uses the marks LAKEKEEPER and WATERKEEPER, among others, to identify and distinguish its distinctive, high-quality services from those of others.

19.   Waterkeeper Alliance is also the owner of a valid, subsisting and incontestable federal registration for the mark WATERKEEPER, namely, U.S. Reg. No. 2,530,116, for "association services, namely promoting the interests of natural resources conservationists", and and according to the reg

"association services, namely promoting the conservation of natural resources". Although the registration for LAKEKEEPER was cancelled on January 14, 2010 as a result of an administrative error, after learning of the status of its registration, Waterkeeper Alliance

promptly refiled trademark application Serial No. 77/928,754 for the mark LAKEKEEPER,

asserting use of the mark since at least as early as February 8, 2002. True and correct copies of

the Certificates of Registration and records from the U.S. Patent and Trademark Office showing

the filing particulars for US Application Serial No. 77928754 are attached hereto as Exhibit C.

Waterkeeper Alliance also owns the mark GREAT SALT LAKEKEEPER, which it licensed to

an authorized licensee in connection with association services, namely, promoting the

conservation of natural resources and interests of natural resources conservationists. As

previously noted, the foregoing marks, including those registered and/or used in commerce.

LAKEKEEPER. WATERKEEPER. and GREAT SALT LAKEKEEPER are referred herein

individually and/or collectively as the "WATERKEEPER Marks."

   20. Over the past five (5) years, Waterkeeper Alliance has expended millions

of dollars on marketing and advertising its advocacy services worldwide. During that same time.

the WATERKEEPER Marks have been extensively and continuously used, advertised and

promoted by Waterkeeper Alliance, as well as by its nearly 200 authorized members, within the

United States and worldwide. For example, the mark WATERKEEPER, LAKEKEEPER and

variants thereof have been prominently presented in advertisements, in promotional materials or

on business signs. Waterkeeper Alliance for many years has also maintained active sites on the

Internet including www.waterkeeper.org, which is operational twenty-four hours a day seven

days a week, through which Waterkeeper Alliance promotes

services under or in connection with the WATERKEEPER Marks.

   21. As a result of the care and skill exercised by Waterkeeper Alliance in

promoting, advertising and offering its services. the supervision and control exercised by

Waterkeeper Alliance over the nature and quality of the association. business and/or services offered under the WATERKEEPER Marks. and the extensive advertising and public acceptance thereof, the WATERKEEPER Marks. which are inherently distinctive. have become well and favorably known, have acquired strong secondary meaning in the marketplace. and symbolize the immense goodwill that Waterkeeper Alliance has created worldwide and within this judicial district.

## DEFENDANT'S INFRINGING ACTIONS

22.     On information and belief. Mr. Salt was. since at least as early as January 1, 2001. the Executive Director of GSLA prior to his employment with Defendant.

23.     On or about May 1. 2001. GSLA submitted an application to Waterkeeper Alliance to become a member organization which would advocate on behalf of the Great Salt Lake watershed. On or about May 15. 2001. the Waterkeeper Board of Directors ("Waterkeeper Board") approved GSLA's application. On or about February 6. 2002. GSLA entered into a license agreement with Waterkeeper Alliance for a term of one year. On or about March 1. 2002. GSLA entered into another license agreement with Waterkeeper Alliance for a term of one year.

24.     On or about January 18. 2004. GSLA entered into the License Agreement with Waterkeeper Alliance. which was executed by Mr. Salt as acting principal on behalf of GSLA, and was to remain in effect unless terminated by Waterkeeper Alliance. Exhibit A. The License Agreement granted GSLA a license to use the WATERKEEPER Marks. including the marks LAKEKEEPER and GREAT SALT LAKEKEEPER. in connection with association services. namely, promoting the conservation of natural resources and the interests of natural

resources conservationists, and an environmental conservation program. Id., ¶ 1. The License Agreement provided that GSLA would pay an annual licensing fee to Waterkeeper Alliance, and would conform to quality standards set by Waterkeeper Alliance. Id., ¶¶ 2-3. The License Agreement further provided that it would continue in force and effect unless Waterkeeper Alliance provided thirty (30) days written notice to GSLA in the event of dissolution of GSLA or upon breach of any provision of the License Agreement. Id., ¶ 8.

25. On information and belief, by letter dated August 29, 2004, Mr. Salt, while still employed by GSLA, allegedly notified Waterkeeper Alliance that he had established tax-exempt non-profit organization for the GREAT SALT LAKEKEEPER environmental conservation program and had registered GREAT SALT LAKEKEEPER as a business owned by Defendant. Mr. Salt's letter also notified Waterkeeper Alliance that Defendant wished to enter into a license agreement with Waterkeeper Alliance to maintain the GREAT SALT LAKEKEEPER environmental conservation program. A copy of this letter is attached hereto as Exhibit D.

26. Although Waterkeeper Alliance did not execute a new written agreement with SUW, the License Agreement was effectively assigned de facto to Defendant. The parties continued to operate, perform and conduct their business in accordance with and pursuant to the License Agreement. For example, Waterkeeper Alliance, at the request of Mr. Salt, authorized Defendant to use under license the WATERKEEPER and related marks, including GREAT SALT LAKEKEEPER, subject to Waterkeeper Alliance's quality standards and provided that Defendant paid the appropriate fees. Defendant, for its part, continued to use the WATERKEEPER Marks with the authorization and permission of Waterkeeper Alliance, and

Defendant continued to pay annual licensing fees to Waterkeeper Alliance. At the very least, by their actions and conduct, the Waterkeeper Alliance and SUW entered a valid, binding trademark license agreement. The parties continued to operate in a licensor/licensee relationship over the course of the next four years.

27.     However, on October 22, 2008, the Waterkeeper Relations Committee ("WRC"), a sanctioned committee of the Waterkeeper Board, convened to consider Defendant's license and membership. WRC voted unanimously to recommend that the Waterkeeper Board revoke Defendant's license and membership because of Defendant's violations of terms in its license agreement and its failure to adhere to Waterkeeper Alliance's mandated quality standards.

28.     By letter dated November 12, 2008, WRC notified SUW of WRC's meeting and recommendation to revoke Defendant's license and membership. The letter instructed Defendant that in the event that the Waterkeeper Board voted to revoke Defendant's license and membership, Defendant must immediately cease using the WATERKEEPER Marks, including LAKEKEEPER and GREAT SALT LAKEKEEPER. A copy of this letter is attached hereto as Exhibit E.

29.     On December 18, 2008, the Waterkeeper Board informed SUW by telephone call to Mr. Sali that the Waterkeeper Board had voted to revoke Defendant's license and membership. The Waterkeeper Board confirmed in letter dated 2008. A copy of this letter is attached hereto as Exhibit F. The letter instructed Defendant to cease use of the LAKEKEEPER mark in all facets of its operations. However, Defendant

continued to make unauthorized use of the WATERKEEPER Marks, including. LAKEKEEPER and GREAT SALT LAKEKEEPER.

30.     On July 13, 2009, counsel for Waterkeeper Alliance wrote to Defendant again, providing further notice that, by its actions. Defendant was willfully and intentionally infringing Waterkeeper Alliance's trademarks and engaging in unfair competition. Waterkeeper Alliance demanded that Defendant voluntarily and immediately cease and desist all use of the WATERKEEPER Marks or variants, or any other name or mark that included a term that was confusingly similar to one or more of the WATERKEEPER Marks, and requested written assurances that Defendant would comply with the demands. A copy of this letter is attached hereto as Exhibit G.

31.     On August 14, 2009, counsel for Waterkeeper Alliance and counsel for Defendant discussed the matter. Counsel for Defendant stated that Defendant sought reinstatement of Defendant's license and membership.

32.     By e-mail on August 19. 2009. counsel for Waterkeeper Alliance notified counsel for Defendant that Waterkeeper Alliance invited Defendant to submit a membership proposal to Waterkeeper Alliance, which would be reviewed by the Waterkeeper Board. Waterkeeper Alliance, however, explained that Defendant must abide by the application procedures. which include refraining from all use of the WATERKEEPER family of marks and variants, pending a final decision on the membership proposal by the Waterkeeper Board.

33.     On September 2, 2009. and confirmed on October 7. 2009. counsel for Defendant responded by e-mail that Defendant would not be submitting a proposal to Waterkeeper Alliance.

34.     On information and belief, after terminating SUW's license and membership, and despite the lack of authorization to do so, Defendant continued to use the WATERKEEPER Marks, including GREAT SALT LAKEKEEPER and GREAT SALT LAKE WATER KEEPERS. Such use of the WATERKEEPER Marks infringes Waterkeeper Alliance's trade name, trademark and service mark rights, and trades unfairly upon the goodwill of the WATERKEEPER Marks.

35.     Defendant's unlawful conduct as described above has caused, is causing and will continue to cause confusion and mistake in the marketplace and deception of the public as to the source, endorsement or sponsorship of Defendant's business and/or services, and/or the relationship or affiliation between the parties.

36.     Defendant's actions, as described above, all: (a) have the likelihood of affecting interstate commerce by deceiving or confusing the public; (b) constitute a false designation of the source or sponsorship of Defendant's business and/or services; (c) suggest a non-existent connection with Waterkeeper Alliance; and/or (d) suggest that Waterkeeper Alliance renders or has sponsored, licensed or approved of Defendant's business and/or services.

37.     As a proximate result of the acts of Defendant as alleged herein, Waterkeeper Alliance has suffered, and unless enjoined by this Court, will continue to suffer great damage to its association, business, goodwill, reputation and profits.

## DEFENDANT'S BREACH OF CONTRACT

38.     As a result of the wrongful acts alleged herein, Defendant has breached its contractual obligations to Waterkeeper Alliance. As discussed, the License Agreement was a valid and binding contract between Waterkeeper Alliance and GSLA. SUW, through Mr. Salt,

notified Waterkeeper Alliance that it had established a tax-exempt, non-profit organization, and

that Defendant wished to enter into a license agreement with Waterkeeper Alliance to maintain

the GREAT SALT LAKEKEEPER environmental conservation program and use the

WATERKEEPER Marks, namely, GREAT SALT LAKEKEEPER.

      39.    As discussed, although Waterkeeper Alliance did not prepare or sign a

new written license agreement with Defendant, the License Agreement was assigned de facto to

Defendant, and a valid and binding contract existed between the parties.   The parties operated,

performed and conducted their business in accordance with the License Agreement, manifesting

their mutual assent to assign the Licensing Agreement to SUW.  Waterkeeper Alliance, at the

request of Mr. Salt, permitted Defendant to use under license the WATERKEEPER Marks and

maintain the GREAT SALT LAKEKEEPER environmental conservation program.  Defendant

paid annual licensing fees to Waterkeeper Alliance for use of the marks and for a time abided by

its quality standards in conformity with the License Agreement.  At a minimum, Waterkeeper

Alliance and SUW entered a valid and binding license agreement that authorized Defendant to

use the WATERKEEPER Marks.

      40.    The License Agreement, under which terms the parties were operating,

and the terms of which were known by Defendant and ratified by its continued payment of the

licensing fees and conduct, provided that "[Waterkeeper Alliance] shall have the right to

terminate this Agreement upon . . . . . . .

dissolution of [Defendant] or upon breach of any of the provisions hereof . . . by [Defendant]."

Exhibit A, ¶ 8.

41.    In addition, upon termination of the License Agreement. Defendant should have "immediately [] discontinue[d] all use of [the WATERKEEPER Marks, including LAKEKEEPER and GREAT SALT LAKEKEEPER] and any term confusingly similar thereto, and [] delete the same from its corporate or business name, . . . destroy all printed materials and signage bearing [the WATERKEEPER Marks, including LAKEKEEPER and GREAT SALT LAKEKEEPER], and that all rights in [the WATERKEEPER Marks, including LAKEKEEPER and GREAT SALT LAKEKEEPER] shall remain the property of [Waterkeeper Alliance]" Exhibit A, ¶ 9.

42.    On information and belief. notwithstanding the fact that Waterkeeper Alliance terminated the agreement and its relationship with SUW in December 2008. Defendant continues to make unauthorized use the WATERKEEPER Marks, including. GREAT SALT LAKEKEEPER and GREAT SALT LAKE WATER KEEPERS. Defendant. through its willful conduct. is in breach of its contractual obligations to Waterkeeper Alliance as a result of the unauthorized use of the WATERKEEPER Marks. thereby. causing irreparable harm and damage to Waterkeeper Alliance.

## DEFENDANT'S WILLFULNESS

43.    As discussed, by letter dated November 10, 2008. Waterkeeper Alliance informed Defendant that WKC had convened on October 22, 2008 and had recommended that the Waterkeeper Board revoke Defendant's license and membership. The letter further informed Defendant of its obligation to cease use of the WATERKEEPER Marks in the event that the Waterkeeper Board would vote to revoke Defendant's license and membership.

44.    Waterkeeper Alliance formally notified Defendant of the Waterkeeper Board's decision to revoke Defendant's license and membership on December 17, 2008, and reminded Defendant of its obligation to immediately cease use of the term LAKEKEEPER in all facets of Defendant's operation.

45.    As a result of Mr. Salt's previous participation on behalf of GSLA and Defendant in its contractual relationship with Waterkeeper Alliance, his previous position as a member of the Waterkeeper Board, and Waterkeeper Alliance's multiple communications to Defendant regarding its use of the WATERKEEPER Marks, Defendant has been on notice that its actions constitute trademark infringement.

46.    The July 13, 2009 letter from counsel for Waterkeeper Alliance provided further notice that by its actions Defendant was willfully and intentionally infringing Waterkeeper Alliance's trademarks and engaging in unfair competition.

## FIRST CAUSE OF ACTION
### (Federal Trademark Infringement)

47.    Waterkeeper Alliance realleges and incorporates herein by reference the allegations of paragraphs 1 through 46 above.

48.    Waterkeeper Alliance owns prior trademark rights in and to its WATERKEEPER Marks, namely, WATERKEEPER, and has priority over Defendant because ... the WATERKEEPER Marks precede Defendant's illegitimate use of the WATERKEEPER Marks or any variants thereof, including GREAT SALT LAKE WATER KEEPERS.

49.     On information and belief, Defendant's unauthorized use of the WATERKEEPER Marks, as alleged herein, is calculated to and is likely to deceive, mislead and confuse relevant consumers.  Such actions constitute trademark infringement in violation of Section 32(a) of the Lanham Act, 15 U.S.C. § 1114.

50.     As a proximate result of Defendant's blatant, intentional and willful acts as alleged herein, Waterkeeper Alliance has suffered and will continue to suffer great damage to its association, goodwill, reputation and profits, while Defendant has profited and will continue to profit from its wrongdoing at Waterkeeper Alliance's expense.

51.     Waterkeeper Alliance has no adequate remedy at law for Defendant's acts constituting infringement of its trademarks as alleged herein.  Unless Defendant is permanently enjoined by the Court, Waterkeeper Alliance will continue to suffer irreparable harm.

### SECOND CAUSE OF ACTION
### (Federal Unfair Competition)

52.     Waterkeeper Alliance realleges and incorporates herein by reference the allegations of paragraphs 1 through 51 above.

53.     The WATERKEEPER Marks, as used in connection with association services, namely, promoting the interests of natural resources conservationists, and related goods and services, are distinctive marks and have become associated with, and hence exclusively identify Waterkeeper Alliance's association, business and/or services.  Indeed, Waterkeeper Alliance owns prior trademark rights in and to its WATERKEEPER Marks and has priority over Defendant because Waterkeeper Alliance's use and/or federal registration of the WATERKEEPER Marks precede Defendant's unauthorized use of the WATERKEEPER Marks

or any variants thereof, including GREAT SALT LAKEKEEPER and GREAT SALT LAKE WATER KEEPERS.

54.     On information and belief, by reason of Defendant's wrongful and unauthorized use of the WATERKEEPER Marks, consumers are likely to believe that Defendant's business and/or services originate with, or are sponsored or otherwise approved by, Waterkeeper Alliance, when in fact Defendant has no connection with Waterkeeper Alliance and Defendant's business and/or services are not approved, licensed or sponsored by Waterkeeper Alliance.

55.     On information and belief, Defendant's unauthorized, misleading and willful use of the WATERKEEPER Marks and/or designations or names confusingly similar thereto constitutes: trademark infringement, unfair competition, false designation of origin, and false representation, affecting interstate commerce in violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

56.     As a proximate result of Defendant's blatant, intentional and willful acts as alleged herein, Waterkeeper Alliance has suffered and will continue to suffer great damage to its association, goodwill, reputation and profits, while Defendant has profited and will continue to profit from its wrongdoing at Waterkeeper Alliance's expense.

57      Waterkeeper Alliance has no adequate remedy at law for Defendant's acts constituting unfair [...]

the Court, Waterkeeper Alliance will continue to suffer irreparable harm.

## THIRD CAUSE OF ACTION
### (Unfair Competition Under New York Common Law)

58.     Waterkeeper Alliance realleges and incorporates herein by reference the allegations of paragraphs 1 through 57 above.

59.     The WATERKEEPER Marks are valid at common law, are strong, inherently distinctive and/or have acquired distinctiveness and/or strong secondary meaning. Waterkeeper Alliance has used the WATERKEEPER Marks, including WATERKEEPER and LAKEKEEPER, to identify Waterkeeper Alliance's services and those of its member organizations for many years.  Such marks have become associated in the minds of the public and of environmental advocates in the State of New York, exclusively with Waterkeeper Alliance's association, business and/or services.

60.     Waterkeeper Alliance owns valid common law trademark rights in and to its WATERKEEPER Marks in the State of New York and its name and marks are particularly strong.

61.     The conduct of Defendant, as described above, is likely to deceive the public into believing falsely that Defendant's business and/or services emanate from Waterkeeper Alliance and/or that there is a connection between Waterkeeper Alliance and Defendant.

62.     Defendant has unfairly competed with Waterkeeper Alliance in violation of the New York common law by displaying, promoting and offering services in connection with the WATERKEEPER Marks, with the intent to induce the public into believing that the business and/or services originate with Defendant and/or that they are connected with Waterkeeper

Alliance, thereby allowing Defendant to trade up on the relationship and goodwill of Waterkeeper Alliance's marks.

63.     On information and belief, Defendant's unfair competitive conduct in violation of New York common law was, and continues to be, a deliberate attempt by Defendant to knowingly misappropriate Waterkeeper Alliance's proprietary trademarks, and to trade off the goodwill and valuable reputation of Waterkeeper Alliance.  Such action evidences a willful attempt by Defendant to usurp the goodwill in the marks owned by Waterkeeper Alliance, and constitutes unfair competition in violation of New York common law.

64.     As a proximate result of Defendant's blatant, intentional and willful acts as alleged herein, Waterkeeper Alliance has suffered and will continue to suffer great damage to its association, goodwill, reputation and profits, while Defendant has profited and will continue to profit from its wrongdoing at Waterkeeper Alliance's expense.

65.     Waterkeeper Alliance has no adequate remedy at law for Defendant's acts constituting unfair competition as alleged herein.  Unless Defendant is permanently enjoined by the Court, Waterkeeper Alliance will continue to suffer irreparable harm.

66.     On information and belief, Defendant's acts were committed intentionally, willfully and wantonly and with oppression, fraud and malice towards Waterkeeper Alliance. Waterkeeper Alliance is therefore entitled to an award of punitive damages for the sake of

## FOURTH CAUSE OF ACTION
## (Trademark Infringement Under New York Common Law)

67.     Waterkeeper Alliance realleges and incorporates herein by reference the allegations of paragraphs 1 through 66 above.

68.     Waterkeeper Alliance is the first and only party entitled to use the WATERKEEPER Marks in connection with association services, namely promoting the conservation of natural resources and the interests of natural resources conservationists. The WATERKEEPER Marks are valid at common law, are strong, inherently distinctive and/or have acquired distinctiveness and/or strong secondary meaning through Waterkeeper Alliance's use or use by authorized licensees of Waterkeeper Alliance, and they have become exclusively associated in the minds of the public with Waterkeeper Alliance's association, business and/or services.

69.     Defendant has wrongfully used marks, names or designations that infringe the WATERKEEPER Marks, including GREAT SALT LAKEKEEPER and GREAT SALT LAKE WATER KEEPERS in connection with a business and/or services as alleged herein with intentional disregard for Waterkeeper Alliance's rights. As a result of such actions, Defendant is misleading the public into believing that the business and/or services it is offering are sponsored or approved by Waterkeeper Alliance, or that there is otherwise a connection between Waterkeeper Alliance and Defendant's business and/or services, all in violation of New York common law concerning the protection of trademarks.

70.     On information and belief, Defendant has intentionally and willfully used marks, names or designations that infringe the WATERKEEPER Marks in a deliberate attempt to misappropriate and trade off the goodwill, fame and valuable reputation of Waterkeeper

Alliance and its WATERKEEPER Marks. and have derived unlawful gains, profits and/or advantages from its infringements.

71.    As a proximate result of Defendant's blatant, intentional and willful acts as alleged herein, Waterkeeper Alliance has suffered and will continue to suffer great damage to its association, goodwill, reputation and profits. while Defendant has profited and will continue to profit from its wrongdoing at Waterkeeper Alliance's expense.

72.    Waterkeeper Alliance has no adequate remedy at law for Defendant's acts constituting unfair competition as alleged herein. Unless Defendant is permanently enjoined by the Court, Waterkeeper Alliance will continue to suffer irreparable harm.

73.    On information and belief, Defendant's acts were committed intentionally, willfully and wantonly and with oppression, fraud and malice toward Waterkeeper Alliance. Waterkeeper Alliance is therefore entitled to an award of punitive damages for the sake of example and by way of punishing Defendant.

### FIFTH CAUSE OF ACTION
#### (Breach of Contract)

74.    Waterkeeper Alliance realleges and incorporates herein by reference the allegations of paragraphs 1 through 73 of the Complaint as set forth above.

75.    On January 30, 2004. Mr. Salt, acting as principal on behalf of GSLA. and ... ... ... having the ........... to contract, entered into the License Agreement Exhibit A.

76.    By letter dated August 29, 2004. Mr. Salt allegedly notified Waterkeeper Alliance that he had established SUW, an exempt, non-profit organization, for the GREAT

SALT LAKEKEEPER environmental conservation program and had registered GREAT SALT

LAKEKEEPER as a business owned by Defendant.  Mr. Salt's letter also allegedly notified

Waterkeeper Alliance that Defendant wished to enter into a license agreement with Waterkeeper

Alliance to maintain the GREAT SALT LAKEKEEPER environmental conservation program.

       77.    Although Waterkeeper Alliance did not execute a new written license

agreement with Defendant, the License Agreement was effectively assigned de facto to

Defendant, and a valid and binding contract existed between the parties.  Indeed, the parties

continued to operate, perform and conduct their businesses in accordance with the License

Agreement.  Waterkeeper Alliance, at the request of Defendant, through its Executive Director,

Mr. Salt, permitted SUW to use under license the WATERKEEPER Marks, including,

LAKEKEEPER and GREAT SALT LAKEKEEPER, and maintain the GREAT SALT

LAKEKEEPER environmental conservation program.  Defendant knew that Waterkeeper

Alliance required compensation and compliance with its quality standards, and, in fact,

Defendant continued to pay annual licensing fees to Waterkeeper Alliance. (See Exhibit B)

These actions by Waterkeeper Alliance and Defendant made manifest their mutual assent to the

License Agreement and all its terms and conditions, or alternatively, and at a minimum, the

parties had entered a valid and binding license agreement authorizing the use of the

WATERKEEPER Marks in accordance with Plaintiff's quality standards.

December 17, 2008, Waterkeeper Alliance notified Defendant of the Waterkeeper Board's

decision to revoke Defendant's license and membership for failure to abide by the quality

standards of Plaintiff.

79.    The License Agreement. under which terms Waterkeeper Alliance and Defendant were operating, and the terms of which were known by Defendant. as well as ratified by Defendant through continued payment of the licensing fee. provided that: "[Defendant] agrees that nothing in this License shall give [Defendant] any right. title or interest in [the WATERKEEPER Marks, including LAKEKEEPER and GREAT SALT LAKEKEEPER] other than the right to use [the WATERKEEPER Marks. including LAKEKEEPER and GREAT SALT LAKEKEEPER] in accordance with this License." Exhibit A. ¶ 2. The License Agreement further provided that "[u]pon termination of this Agreement. [Defendant] agrees immediately to discontinue all use of [the WATERKEEPER Marks. including LAKEKEEPER and GREAT SALT LAKEKEEPER] and any term confusingly similar thereto. and to delete the same from its corporate business name." Exhibit A. ¶ 9. By ratifying the terms of the agreement through its payments to Waterkeeper Alliance. Defendant explicitly agreed to cease use of the WATERKEEPER Marks or any variants or derivatives thereof upon it is termination.

80.    On information and belief. notwithstanding Waterkeeper Alliance's termination of the License Agreement and/or its relationship with SUW., Defendant continues to display and use the WATERKEEPER Marks or marks confusingly similar thereto without Waterkeeper Association's authorization or approval. By the egregious conduct as alleged herein. Defendant has breached its contract with Waterkeeper Alliance. and continues to cause

herein. Defendant has breached its contractual obligations to Waterkeeper Alliance.

81. On account of Defendant's breach of contract, Waterkeeper Alliance has also expended substantial time, effort and resources trying to enforce its intellectual property and contractual rights.

82. As a proximate result of Defendant's blatant, intentional and willful acts as alleged herein, Waterkeeper Alliance has suffered and will continue to suffer great damage to its association, goodwill, reputation and profits, while Defendant has profited and will continue to profit from its wrongdoing at Waterkeeper Alliance's expense.

83. Waterkeeper Alliance has no adequate remedy at law for Defendant's acts constituting breach of contract as alleged herein. Unless Defendant is permanently enjoined by the Court, Waterkeeper Alliance will continue to suffer irreparable harm.

## PRAYER FOR RELIEF

WHEREFORE, Waterkeeper Alliance prays for entry of judgment and for relief against Defendant as follows, that:

84. Defendant Spirit of Utah Wilderness, Inc., its successor and assigns, and their respective officers, directors, agents, servants, employees, representatives, and Mr. Jeff Salt, and all other persons, firms or corporations in active concert or participation with Defendant, be permanently enjoined and restrained from: (a) any and all use of the WATERKEEPER MARKS, ENVIRONMENTAL PROTECTION ENFORCEMENT, GREAT SALT LAKE WATER KEEPERS and/or variants thereof; and (b) using any other name or mark owned by Waterkeeper Alliance in a manner which is likely to cause confusion as to the source or sponsorship of Defendant's business and/or services.

85.     Defendant, pursuant to 15 U.S.C. § 1118. shall be ordered to deliver up for destruction all materials, labels, signs, prints, wrappers, receptacles, articles, advertisements and promotional materials in its possession or control bearing the WATERKEEPER Marks, LAKEKEEPER, WATERKEEPER, GREAT SALT LAKEKEEPER, GREAT SALT LAKE WATER KEEPERS, and variants thereof, or any marks likely to cause confusion therewith, or referring thereto;

86.     Defendant, pursuant to 15 U.S.C. § 1116(a), shall be directed to file with this Court and serve upon Waterkeeper Alliance within thirty (30) days after entry of the injunction, a report in writing under oath, setting forth in detail the manner and form by which they have complied with the injunction;

87.     Waterkeeper Alliance shall recover its damages sustained as a result of Defendant's unfair competition and infringement of the WATERKEEPER Marks, including but not limited to lost revenue from Defendant's unpaid licensing fees.

88.     Defendant shall account for and pay over to Waterkeeper Alliance all profits realized by its unlawful actions alleged hereunder;

89.     Waterkeeper Alliance shall be awarded three times Defendant's profits or three times Waterkeeper Alliance's damages, whichever is greater, together with its reasonable attorneys' fees, pursuant to 15 U.S.C. §§ 1117(a) and (b);

1117(a) and (b), and Waterkeeper Alliance shall recover its reasonable attorneys' fees expended in connection therewith;

91.   Waterkeeper Alliance shall be awarded punitive and exemplary damages under New York State law for Defendant's willful and intentional acts of unfair competition and infringement;

92.   Waterkeeper Alliance shall recover its costs and attorneys fees for this action and prejudgment interest; and

93.   Waterkeeper Alliance shall recover such further relief to which it may be entitled.

Respectfully submitted.

BAKER BOTTS L.L.P.

Dated: February 11, 2010            By:   _Paul J. Reilly_

Paul J. Reilly
BAKER BOTTS L.L.P.
30 Rockefeller Plaza
New York, NY 10112-4498
(212) 408-2500
*Attorneys for Plaintiff*