UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

WATERKEEPER ALLIANCE INC.,

               Plaintiff,

  -against-

SPIRIT OF UTAH WILDERNESS, INC.,
d/b/a GREAT SALT LAKEKEEPER, or
GREAT SALT LAKE WATER KEEPERS,
               Defendant.
------------------------------------------------------------X
SPIRIT OF UTAH WILDERNESS, INC.,
d/b/a GREAT SALT LAKEKEEPER, or
GREAT SALT LAKE WATER KEEPERS,

               Counterclaimant,

  -against-

WATERKEEPER ALLIANCE INC.,

               Counterdefendant.
------------------------------------------------------------X

10-cv-1136 (NSR)
DEFAULT JUDGMENT
AND ORDER

NELSON S. ROMÁN, United States District Judge:

      On February 11, 2010, Plaintiff Waterkeeper Alliance, Inc. ("Waterkeeper"), initiated this action against Defendant Spirit of Utah Wilderness, Inc. ("SUW"), alleging trademark infringement, unfair competition, and related New York State law claims. Before the Court is Plaintiff's application for the entry of a default judgment against SUW, based on SUW's failure to appear by counsel. For the following reasons, Plaintiff's application is GRANTED.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 5/8/2015

1

Copies (mailed)/faxed to Spirit of Utah 5/8/15
Chambers of Nelson S. Román, U.S.D.J.

**I.   BACKGROUND**

The following facts are taken from Plaintiff's Complaint and the parties' submissions on this motion, as noted.

Plaintiff is an environmental organization. (Compl. ¶ 21.) Waterkeeper and its predecessor have used the name Waterkeeper and other related marks containing the term "keeper" ("the Waterkeeper Marks") since 1999, including the marks Creekkeeper, Baykeeper, and Lakekeeper. (Compl. ¶ 18.) Waterkeeper has approximately 200 member organizations, and each member organization has obtained a license from Waterkeeper to use the Waterkeeper Marks. (Compl. ¶ 16.)

In 2001, Great Salt Lake Audubon ("GLSA") applied to become a member organization of Waterkeeper and to use the name Great Salt Lakekeeper; its application was approved. (Compl. ¶ 23.) At the time that GLSA became a member organization, Jeffrey Salt was the Executive Director of GLSA. (Compl. ¶ 23.) Waterkeeper and GLSA entered into a series of license agreements, recognizing Waterkeeper's ownership of the Lakekeeper mark (the "Mark") and providing that GLSA, as the licensor and user of the Mark, would not attack the title of owner to the Mark or attack the validity of the license. (*See* Compl. Ex. A.) In 2004, the license agreement was assigned de facto to Defendant SUW, and the parties continued to operate and conduct their business in accordance with the agreement. (Compl. ¶ 26.)

In October 2008, the Waterkeeper Relations Committee ("WRC"), a committee of the Waterkeeper Board, voted to recommend that the Waterkeeper Board revoke SUW's license and membership after Defendant violated the terms of its license agreement and failed to adhere to Waterkeeper's mandated quality standards. (Compl. ¶ 27.) WRC notified SUW of its decision in November 2008. (Compl. ¶ 28.) On December 18, 2008, the Waterkeeper Board informed SUW

by telephone call to Jeffrey Salt that the Board had voted to revoke SUW's license and membership. (Compl. ¶ 29.) SUW, however, has continued to make unauthorized use of the Waterkeeper Marks, including the Lakekeeper mark. (Compl. ¶¶ 29, 34.) Plaintiff has alleged that SUW's conduct constitutes willful and intentional infringement. (*See* Compl. ¶¶ 43-46.)\

Plaintiff initiated the instant action on February 11, 2010. Following the completion of discovery, the Court held a pre-motion conference on March 6, 2014. At the conference, SUW's counsel advised the Court of their intention to move to withdraw as counsel. The Court granted counsel's motion to withdraw on April 11, 2014. (*See* ECF No. 54.) After granting SUW additional time in which to find new counsel, the Court gave Defendant a deadline of September 19, 2014, to appear by counsel. SUW failed to do so, and instead Jeffrey Salt filed a motion to intervene, which was denied. (*See* ECF No. 86.) Plaintiff filed an application for the entry of a default judgment in October 2014. (*See* ECF Nos. 66- 68.) The Court issued an order to show cause on November 17, 2014. (ECF No. 76.) A show-cause hearing was held on December 4, 2014, and Defendant failed to appear.

## II.  DEFAULT JUDGMENT STANDARD

Rule 55 of the Federal Rules of Civil Procedure governs default judgments. The rule states, in pertinent part: "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise the clerk must enter the party's default." Fed. R. Civ. P. 55(a). In a case where the plaintiff's claim is not for a sum certain, the party must also apply to the court for a default judgment. Fed. R. Civ. P. 55(b). The decision as to whether to enter a default judgment is left to the "sound discretion of a district court." *Palmieri v. Town of Babylon*, 277 F. App'x 72, 74 (2d Cir. 2008).

### III.    ANALYSIS

Adjudication on the merits, rather than the entry of judgment based on a default, is generally preferred. *See Pecarsky v. Galaxiworld.com, Ltd.*, 249 F.3d 167, 174 (2d Cir. 2001) ("A clear preference exists for cases to be adjudicated on the merits."); *U.S. Fidelity and Guar. Co. v. Petroleo Brasileiro S.A.*, 220 F.R.D. 404, 406 (S.D.N.Y. 2004). However, "where a corporation repeatedly fails to appear by counsel, a default judgment may be entered against it pursuant to Rule 55." *Securities & Exchange Comm'n v. Research Automation Corp.*, 521 F.2d 585, 589 (2d Cir. 1975); *see also Grace v. Bank Leumi Trust Co. of N.Y.*, 443 F.3d 180, 192 (2d Cir. 2006). This is because "[i]t is settled law that a corporation may not appear in a lawsuit against it except through an attorney." *Grace*, 443 F.3d at 192.

This Court granted the motion of SUW's former counsel to withdraw from representation in April 2014. (*See* ECF No. 54.) Since then, SUW has repeatedly been instructed that a corporation must be represented by counsel and cannot appear pro se. Despite receiving multiple extensions of time in which to find new counsel, SUW has failed to do so. (*See* ECF Nos. 55, 60.) At a pre-motion conference on September 4, 2014, SUW was granted a final extension of time in which to secure counsel and was ordered to appear by counsel by September 19. Plaintiff again failed to meet its deadline. Instead, SUW attempted to circumvent the Court's order by assigning SUW's alleged interest in the marks at issue to Mr. Salt himself on September 19. (*See generally* Potential Intervenor's Mot. to Intervene as of Right, ECF No. 61.) The agreement assigning SUW's interest to Mr. Salt appears to have been executed for the purposes of circumventing the rule that a corporation must be represented by counsel and the Court's deadline for appearance by counsel. (*See* ECF No. 86 at 2 ("As discussed during the October 29th conference, the Court finds that the alleged assignment of interest by SUW to Mr. Salt is nothing

4

more than a blatant attempt to circumvent the rule that a corporation must be represented by counsel.").)

"[S]uch cavalier disregard for a court order is a failure, under Rule 55(a), to 'otherwise properly defend as provided by these rules.'" *Shapiro, Bernstein & Co. v. Continental Record Co.*, 386 F.2d 426, 427 (2d Cir. 1967) (quoting Fed. R. Civ. P. 55(a)); *see also* Eagle Associates v. Bank of Montreal, 926 F.2d 1305, 1310 (2d Cir. 1991). SUW has now failed to appear by counsel for over a year, in violation of this Court's orders, and its failure to do so has ground the litigation to a halt. It is clear that Defendant has failed to "otherwise properly defend," within the meaning of Rule 55.

  A. <u>Liability</u>

SUW's default establishes its liability in this case. Rule 54 dictates that "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). In fashioning relief, the Court "accept[s] as true all of the factual allegations of the complaint, except those relating to damages." *Au Bon Pain Corp. v. Artect*, Inc., 653 F.2d 61, 65 (2d Cir. 1981); *see also Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.,* 109 F.3d 105, 108 (2d Cir.1997) ("[A] default judgment deems all the well-pleaded allegations in the pleadings to be admitted."); *Cotton v. Slone,* 4 F.3d 176, 181 (2d Cir.1993); *Time Warner Cable v. Barnes,* 13 F.Supp.2d 543, 547 (S.D.N.Y.1998) ("Upon entry of a default judgment . . . a defendant admits every well-pleaded allegation of the Complaint except those relating to damages." (internal quotation omitted)). Thus, the Court looks only to whether Plaintiff has provided adequate support for the relief that it seeks. *See Credit Lyonnais Sec. (USA), Inc. v. Alcantara,* 183 F.3d 151, 155 (2d Cir.1999); *see also Gucci Am., Inc. v. Tyrrell-Miller*, 678 F. Supp. 2d 117, 119 (S.D.N.Y. 2008).

"To succeed on its Lanham Act claims, [a Plaintiff] must show that it has a valid mark that is entitled to protection under the Lanham Act and that [the Defendant's] actions are likely to cause confusion with [Plaintiff's] mark." *The Sports Authority, Inc. v. Prime Hospitality Corp.,* 89 F.3d 955, 960 (2d Cir.1996) (citing *Gruner + Jahr USA Publ'g v. Meredith Corp.,* 991 F.2d 1072, 1075 (2d Cir.1993)); *see also Lorillard Tobacco Co. v. Jamelis Grocery, Inc.,* 378 F.Supp.2d 448, 454 (S.D.N.Y.2005); *Gucci Am., Inc. v. Duty Free Apparel, Ltd.,* 286 F.Supp.2d 284, 287 (S.D.N.Y.2003).

Plaintiff asserts that Waterkeeper, "itself or through its predecessors in interest, owns and has continuously used the mark LAKEKEEPER since 2002 and WATERKEEPER since 1999." (Compl. ¶ 18.) Waterkeeper is also the owner of a federal registration for the mark WATERKEEPER, and until recently owned a federal registration for the mark LAKEKEEPER. (Compl. ¶ 19.) The registration for the Lakekeeper mark was cancelled on January 4, 2010, due to an administrative error, but Waterkeeper has since refiled its trademark registration application for the Lakekeeper mark. (Compl. ¶ 19.) "[A] mark registered by its owner shall be *prima facie* evidence of the registrant's exclusive right to use the mark in commerce on the product." *Gruner + Jahr USA Pub., a Div. of Gruner + Jahr Printing & Pub. Co. v. Meredith Corp.*, 991 F.2d 1072, 1076 (2d Cir. 1993). Thus, Plaintiff has satisfied the requirement that it have a valid mark entitled to protection under the Lanham Act.

In order to satisfy the second prong, Plaintiff must show likelihood of confusion. Plaintiff alleges that Defendant's unauthorized use of the Waterkeeper Marks "has caused, is causing and will continue to cause confusion and mistake in the marketplace and deception of the public as to the source, endorsement or sponsorship" of SUW's work and/or any affiliation between the parties. (Compl. ¶ 35.) Accepting the allegations made in the Complaint as true, the Court finds

that Plaintiff has alleged sufficient facts to demonstrate the existence of a likelihood of confusion based on SUW's unauthorized use of the Waterkepeer Marks.

Similarly, Plaintiff has alleged sufficient facts to support its New York common law trademark infringement and unfair competition claims. "To prevail on a claim of common law trademark infringement, plaintiff must establish that its mark is valid and legally protectible and that another's use of a similar mark is likely to create confusion as to the origin of the product." *Horn's, Inc. v. Sanofi Beaute, Inc.*, 963 F. Supp. 318, 328 (S.D.N.Y. 1997) (citing *Tri-Star Pictures, Inc. v. Leisure Time Productions, B.V.*, 17 F.3d 38, 43 (2d Cir. 1994). As for the unfair competition claim, the essence of such a claim is "the bad faith misappropriation of the labors and expenditures of another, likely to cause confusion or to deceive purchasers as to the origin of the goods." *Horn's*, 963 F. Supp. at 328. As discussed *supra*, Plaintiff has satisfactorily alleged that it has a valid and legally protectable mark, that there is unauthorized (and thus bad faith) use of the mark by Defendant, and that a likelihood of confusion arises from SUW's use of the Waterkeeper Marks.

Finally, the Court also finds that Plaintiff's breach of contract claim is grounded in sufficient factual allegations. Plaintiff alleges that the license agreement between the original parties was a valid and binding contract. (Compl. ¶¶ 38-39.) This agreement was assigned de facto to SUW. (Compl. ¶¶ 26, 77.) In December 2008, Waterkeeper notified SUW of the decision to revoke SUW's license and membership for failure to abide by the quality standards of Waterkeeper, as required by the agreement. (Compl. ¶ 78.) By ratifying the terms of the agreement, Defendant agreed to cease use of the Waterkeeper Marks or any variants thereof upon its termination. (Compl. ¶ 79.) SUW has continued to use the marks at issue without

authorization or approval, thus breaching the contract and causing Waterkeeper to suffer damages. (Compl. ¶¶ 80-82.)

      B. Injunctive Relief

"A court may issue an injunction on a motion for default judgment provided that the moving party shows that (1) it is entitled to injunctive relief under the applicable statute and (2) it meets the prerequisites for the issuance of an injunction." *Pitbull Prods., Inc. v. Universal Netmedia, Inc.*, No. 07 Civ. 1784, 2007 WL3287368, at *5 (S.D.N.Y. Nov. 7, 2007); *see also Gucci America, Inc. v. Tyrrell-Miller*, 678 F. Supp. 2d 117, 120 (S.D.N.Y. 2008). Section 34 of the Lanham Act gives district courts "the power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable," thus satisfying the first prong of the inquiry. 15 U.S.C. § 1116; *see also Tyrrell-Miller*, 678 F. Supp. 2d at 120.

In order to satisfy the second prong, the requesting party "must demonstrate (1) actual success on the merits and (2) irreparable harm." *Gucci Am., Inc., v. Duty Free Apparel, Ltd.*, 286 F. Supp. 2d 284, 290 (S.D.N.Y. 2003). "[D]efendant['s] default constitutes an admission of liability," and thus Plaintiff has established actual success on the merits and met the first prerequisite for an injunction. *See Gucci America, Inc. v. MyReplicaHandbag.com*, No. 07 Civ. 2438, 2008 WL 512789, at *5 (S.D.N.Y. Feb. 26, 2008); *see also Gucci America, Inc. v. Tyrrell-Miller*, 678 F. Supp. 2d 117, 120 (S.D.N.Y. 2008). "When in the licensing context unlawful use and consumer confusion have been demonstrated, a finding of irreparable harm is automatic." *Church of Scientology Int'l v. Elmira Mission of the Church of Scientology*, 794 F.2d 38, 42 (2d Cir. 1986.) Thus, Plaintiffs have also demonstrated the second prerequisite for an injunction.

C. <u>Costs and Attorney's Fees</u>

Plaintiff requests an award for attorney's fees under the Lanham Act. Section 35(a) of the Lanham Act allows for an award of attorney's fees to a prevailing party in "exceptional cases." See 15 U.S.C. § 1117(a). The Second Circuit has limited the exceptional cases warranting an attorney's fees award to those "evidencing fraud, bad faith, or willful infringement." *Prot. One Alarm Monitoring, Inc. v. Exec. Prot. One Sec. Serv.*, LLC, 553 F. Supp. 2d 201, 207. (E.D.N.Y. 2008); *see also Gordon & Breach Sci. Publishers S.A. v. Am. Inst. of Physics*, 166 F.3d 438, 439 (2d Cir. 1999). Taking the allegations in the Complaint as true, Plaintiff has set forth that SUW's infringement was willful, and thus an award of attorney's fees is appropriate. Additionally, "[c]ourts generally award costs to prevailing parties in cases involving violations of the Lanham Act." *Prot. One Alarm Monitoring*, 553 F. Supp. 2d at 210 (citing *Tri-Star Pictures, Inc. v. Unger*, 42 F. Supp. 2d 296, 306 (S.D.N.Y. 1999) and 15 U.S.C. § 1117(a)). As a result of SUW's default, Waterkeeper has prevailed in the instant case and is therefore entitled to recover reasonable out-of-pocket litigation costs.

## IV.  CONCLUSION AND DECREE

Accordingly, Plaintiff's application for a default judgment is granted. The Clerk of the Court is directed to docket an entry of default based on SUW's failure to appear by counsel.

It is hereby ordered and adjudged that a final default judgment be entered in in favor of the Plaintiff Waterkeeper Alliance, Inc., and against the Defendant Spirit of Utah Wilderness, Inc., d/b/a Great Salt Lakekeeper or Great Salt Lake Water Keepers.

It is further ordered and adjudged that Defendant Spirit of Utah Wilderness, Inc., d/b/a Great Salt Lakekeeper or Great Salt Lake Water Keepers, and its officers, agents, servants,

employees, and attorneys, and all persons in active concert and participation with it, including but not limited to Jeffrey Salt, are hereby restrained and enjoined from:

    (a) using the "Waterkeeper Marks," as defined in paragraph 19 of the Complaint in this case, including the Marks and terms Lakekeeper, Waterkeeper, Great Salt Lakekeeper, Great Salt Lake Water Keepers, and/or variants thereof;

    (b) referring to Jeffrey Salt as the Great Salt Lakekeeper or the Executive Director of the Great Salt Lakekeeper, or any other similar reference;

    (c) using any other name or marked owned by Waterkeeper Alliance in a manner which is likely to cause confusion as to the source or sponsorship of Defendant's business and/or services, including but not limited to manufacturing, distributing, marketing, advertising, promoting, or otherwise distributing in digital or paper form, any correspondence, email, books, papers, pamphlets, paraphernalia, or merchandise that uses any of the Waterkeeper Marks, including the Marks and terms Lakekeeper, Waterkeeper, Great Salt Lakekeeper, Great Salt Lake Water Keepers, and/or variants thereof;

    (d) using or operating any email address, email list, electronic bulletin board, listserv, website, etc., that contains the infringing Waterkeeper Marks, including the Marks and terms Lakekeeper, Waterkeeper, Great Salt Lakekeeper, Great Salt Lake Water Keepers, and/or variants thereof, including any email with the suffix "@greatsaltlakekeeper.org";

    (e) effecting assignments or transfers, forming new entities or associations, or using any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in this Order; and

(f) assisting, inducing, aiding or abetting any other person or business entity in engaging in or performing any of the activities referred to in the preceding lettered paragraphs.

It is further ordered and adjudged that, pursuant to 15 U.S.C. § 1118, Defendant Spirit of Utah Wilderness, Inc., d/b/a Great Salt Lakekeeper or Great Salt Lake Water Keepers, and its officers, agents, directors, and employees, and all persons in active concert and participation with it, including but not limited to Jeffrey Salt, is ordered to deliver up for destruction all materials, labels, signs, prints, wrappers, receptacles, articles, advertisements, and promotional materials in its possession or control, or in the possession or control of its officers, agents, servants, employees, and attorneys, bearing the Waterkeeper Marks, Lakekeeper, Waterkeeper, Great Salt Lakekeeper, Great Salt Lake Water Keepers, and/or variants thereof, or any marks likely to cause confusion therewith, or referring thereto.

It is further ordered that this matter is referred to Magistrate Judge Lisa M. Smith for an inquest regarding attorney's fees and costs.

Dated: May 8, 2015
White Plains, New York

SO ORDERED:

_____
NELSON S. ROMÁN
United States District Judge