UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                                                                 :

WATERKEEPER ALLIANCE INC.,                :

                Plaintiff,                        :                10-cv-1136 (NSR)
    -against-                                  :             MEMORANDUM AND
                                             :                ORDER
SPIRIT OF UTAH WILDERNESS, INC.,     :
d/b/a GREAT SALT LAKEKEEPER, or      :
GREAT SALT LAKE WATER KEEPERS,  :
               Defendant.                   :
------------------------------------------------------------X
SPIRIT OF UTAH WILDERNESS, INC.,     :
d/b/a GREAT SALT LAKEKEEPER, or      :
GREAT SALT LAKE WATER KEEPERS, :

              Counterclaimant,             :
    -against-                                  :

WATERKEEPER ALLIANCE INC.,            :

              Counterdefendant.           :
------------------------------------------------------------X

NELSON S. ROMÁN, United States District Judge:

       By Memorandum and Order, dated September 14, 2018, the Court set this matter down for an evidentiary hearing to determine whether Defendant Spirit of Utah Wilderness, Inc. d/b/a Great Salt Lakekeeper or Great Salt Lake Water ("Defendant" or "SUW") and its officer(s) violated the terms and conditions of this Court's Default Judgment and Order, dated May 8, 2015("Default Order"), and Decision and Order, dated October 2, 2017 ("Contempt Order"), (collectively referred to as the "Prior Orders"), such that the Defendant and/or its officers should be held in contempt of the court, and to determine what, if any, sanctions were appropriate. The Court held

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 4/3/2019

1

a hearing on October 17, 2018. Based on the credible evidence proffered, the Court makes the following findings of facts.

## BACKGROUND[1]

Plaintiff Waterkeeper Alliance, Inc. ("Plaintiff" or "Waterkeeper") is an environmental organization, which currently has approximately 330 worldwide member and affiliate organizations. (Hearing Transcript ("Tr.")) Each member organization protects a watershed or water body. (*Id.*). Waterkeeper uses the name "Waterkeeper" and other related marks containing the term "keeper" (the "Waterkeeper Marks" or "Marks"), including the marks Creekkeeper, Baykeeper, and Lakekeeper. (*Id.*) Each member and affiliate organization obtains a license from Waterkeeper to use the Waterkeeper Marks. (*Id.*)

Defendant SUW became a member organization of Waterkeeper. (*Id.*) Salt was SUW's principal and SUW was granted a conditional license to use the Great Salt Lakekeeper name pursuant to a license agreement. Subsequently, Salt was arrested, prosecuted for assault, convicted and incarcerated. Because of this conduct and other irregularities, which violated the license agreement, Waterkeeper revoked SUW's license and membership, as well as Salt's right to continue to use the Waterkeeper Marks. (*Id.*)

After revoking the license, Salt continued to use the Waterkeeper Marks, refer to himself as the Great Salt Lakekeeper, and use the email address, Jeffsalt@greatsaltlakekeeper.com. Waterkeeper commenced this action alleging trademark infringement, unfair competition, and related New York State law claims in order to prevent Salt from continuing to use the Waterkeeper Marks. (*Id.*) During the course of litigation, SUW's then-counsel withdrew from representing SUW. (ECF No. 54.) SUW, a corporate defendant, did not retain new counsel. (*Id.*) After being

---

[1] The background and facts were obtained from the evidence adduced at the hearing and from the docket.

2

given nearly six months to retain new counsel and appear by counsel, SUW defaulted. (*Id*.) By Default Order, dated May 8, 2015, this Court found that Salt had infringed upon Waterkeeper's Marks and enjoined SUW, its officers and Salt from, among other things:

> (a) using the "Waterkeeper Marks," as defined in paragraph 19 of the Complaint in this case, including the Marks and terms Lakekeeper, Waterkeeper, Great Salt Lakekeeper. Great Salt Lake Water Keepers, and/or variants thereof;
> (b) referring to Jeffrey Salt as the Great Salt Lakekeeper or the Executive Director of the Great Salt Lakekeeper, or any other similar reference; and
> (c) using or operating any email address, email list, electronic bulletin board, listserv, website, etc., that contains the infringing Waterkeeper Marks, including the Marks and terms Lakekeeper, Waterkeeper, Great Salt Lakekeeper, Great Salt Lake Water Keepers, and/or variants thereof, including any email with the suffix "@greatsaltlakekeeper.org".

(Default Oder 100 at 10-11.) Salt did not comply with the Default Order. (Tr.) He continued to refer to himself to as the Executive Director of the Great Salt Lakekeeper and to use the email domain suffix@greatsaltlakekeeper.org. (*Id*.)

Waterkeeper filed a motion to hold Salt in contempt of the Default Order. (ECF No. 121.) By Contempt Order, dated October 2, 2017, the Court found that Salt was in contempt and had violated the Initial Order. The Court's findings in the Contempt Order are incorporated by reference herein. The Contempt Order directed Salt to:

> (a) immediately comply fully with the terms of the [Default Order];
> (b) provide [Waterkeeper] and the Court with a complete list identifying with specificity all instances in which Mr. Salt has used the Waterkeeper Marks after May 8, 2015, including in documents, correspondence, and on the internet, by November 2, 2017;
> (c) pay a $500 fine, plus a daily compliance fine of $100 per day for failure to comply with the [Default Order] as well as [the Contempt Order]; and
> (d) pay a $700 fine for each future violation of the [Default Order].

The Contempt Order, however, suspended the fines, conditioned upon Salt's complying with the prior Orders by November 2, 2017. (Contempt Order 9-10).

3

On February 8, 2018, Waterkeeper filed a motion for sanctions and to hold SUW and Salt in further contempt, alleging that Salt continued to fail to comply with the Court's Prior Orders. This Court held an evidentiary hearing regarding Waterkeeper's motion wherein Waterkeeper's General Counsel, Daniel Estrin, Esq. ("Estrin"), testified.

## FINDINGS OF FACT

Based upon Estrin's credible testimony and the exhibits proffered, Waterkeeper established that SUW, its officers and Salt have continued to violate the Default Order and have failed to comply with the Contempt Order. Salt continued to violate the Prior Orders by publicly referring to himself as the "Great Salt Lakekeeper" and "Lakekeeper" on Linkedin.com and on Salt's website, greatsaltlakekeeper.org website. (Tr. 9, 19 – 22, Ex. 5.) Salt testified at a State of Utah legislation committee hearing where he publicly identified himself as "the Director of Great Salt Lakekeeper and Friends of Utah Lake." (Tr. 30.) Subsequent media coverage of the hearing referred to Salt as "Director of the Great Salt Lakekeeper" on the basis of Salt's statements. (Tr. 31, Ex. 7.)

SUW and Salt failed to provide Waterkeeper or the Court with a list of the instances in which he violated the Default Order as required by the Contempt Order. (Tr. 10-11.) Salt also has not paid the fines he was required to pay under the Contempt Order. (Tr. 11.) Salted continued to violate the Prior Orders by continuing to use the email address "jeffsalt@greatsaltlakekeeper.org" subsequent to the date of the Orders. (Tr. 9-10, 17, 22-24, Exs. 4, 6.) SUW and Salt continued to violate the Prior Orders by continuously maintaining the website "greatsaltlakekeeper.org." (Tr. 12-17, Ex 3.) SUW and Salt's continued violation of the Prior Orders has caused and is continuing to cause Waterkeeper harm.

Waterkeeper's objective is to have every major water body and watershed covered by a strong and competent Waterkeeper organization to preserve and protect them. For the past ten years, Waterkeeper has not obtained a replacement for Salt and SUW because interested groups have been unwilling to become the Great Salt Lakekeeper while Salt continues to publicly hold himself out as having that title and responsibility. (Tr. 31-33). Waterkeeper also continues to incur reputational damage as a result of Salt's violations of the Prior Orders. Salt is a "pariah" in the Great Salt Lake environmental community because of both the positions he takes and his violent, criminal history. (Tr. 34.) Waterkeeper is incurring on-going harm by being viewed as being associated with Salt notwithstanding that it revoked his license to use the mark approximately 10 years ago. (Tr. 32.)

**Contempt Standard**

"[C]ourts have inherent power to enforce compliance with their lawful order[sic] through civil contempt." *Armstrong v. Guccione*, 470 F.3d 89, 102 (2d Cir. 2006) (quoting *Shillitani v. U.S.*, 384 U.S. 364, 370 (1966). The purpose of civil contempt is to ensure a party's future compliance with court orders, and to compensate victims of contempt for harms sustained as a result thereof. *See Weitzman v. Stein*, 98 F.3d 717, 720 (2d Cir. 1996); *King v. Allied Vision, Ltd*., 65 F.3d 1051, 1062 (2d Cir. 1995). "A party may be held in civil contempt for failure to comply with a court order if '(1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner.'" *Paramedics Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Techs., Inc.,* 369 F.3d 645, 655 (2d Cir. 2004). It need not be established that the violation was willful. *Id*. at 655 (citing *Donovan v. Sovereign Sec., Ltd*., 726 F.2d 55, 59 (2d

5

Cir. 1984)). All three conditions for contempt of this Court's prior Orders have been met in this case.

"An order is 'clear and unambiguous' where it is 'specific and definite enough to apprise those within its scope of the conduct that is being proscribed' or required." *Natl. Basketball Ass'n v. Design Mgt. Consultants, Inc.*, 289 F. Supp. 2d 373, 377 (S.D.N.Y. 2003). Further, a clear and unambiguous order "leaves 'no uncertainty in the minds of those to whom it is addressed,' who 'must be able to ascertain from the four corners of the order precisely what acts are forbidden.'" *King v. Allied Vision, Ltd.,* 65 F.3d at 1058 (internal citations omitted). The Court's Initial Order was clear and unambiguous. It was specific and definite enough to put Salt on notice that he was prohibited from using the email doman suffix "@greatsaltlakekeeper" or referring to himself as the Executive Director of the Great Salt Lakekeeper.

The Court's Contempt Order was also clear and unambiguous. It provided SUW, its officers and Salt with notice of how Salt violated the Default Order by using the prohibited email domain and executive title and contained specific details and instructions on how Salt could purge his contempt, i.e., by providing accounting of all instances of his infringement, and by abiding by the terms of the Order. The standard of clear and convincing evidence requires the alleging party to demonstrate to a "reasonable certainty" that a court order was violated. *See Levin v. Tiber Holding Corp.*, 277 F.3d 243, 250 (2d Cir. 2002).

"Online evidence" has been found to be "clear and convincing" proof of a violation of a preliminary injunction. See, e.g., *A.V. by Versace, Inc. v. Gianni Versace S.p.A.*, 87 F.Supp.2d 281, 294, 294–95 (S.D.N.Y. 2000). The evidence outlined above, all of which is undisputed, demonstrates to a "reasonable certainty" that SUW and Salt has violated the Prior Orders. The

6

evidence further supports a finding that SUW and Salt have not diligently sought to comply with the Prior Orders but have willfully ignored and disobeyed them.

In analyzing a party's diligence in compliance with an order, courts "examine the defendant's actions and consider whether they are based on a good faith and reasonable interpretation of the court order." *Schmitz v. St. Regis Paper Co.,* 758 F. Supp. 922, 927 (S.D.N.Y. 1991). A party's ability to comply with an order "must be beyond the realm of possibility, not just difficult to achieve, before a party will be exonerated in a contempt proceeding." *Barcia v. Sitkin*, 79 CIV. 5831 (RLC), 1997 WL 66785, at *2 (S.D.N.Y. Feb. 14, 1997). After Waterkeeper initially learned that Salt had continued to refer to himself as the "Great Salt Lakekeeper," Waterkeeper demanded that Salt "cease and desist" and filed its first motion for contempt. Salt responded to the cease and desist letter by saying that he was in acting in accordance with the Default Order and that he would continue to do so, without an apology or explanation. Thus, Salt did not claim that he could not comply or that compliance was impossible. Rather, he falsely assured Plaintiff that he was in compliance with the Default Order, even though he clearly was not. Thereafter, Salt continued to violate the Default Order after being served with the Contempt Order and then failed to abide by the Contempt Order. This includes failing to provide Waterkeeper with a list of his infringements by November 2, 2017. (Tr. 10-11).

In assessing sanctions for civil contempt, district courts have "wide discretion in fashioning a remedy." *Weitzman*, supra, 98 F.3d at 719. "[A] sanction imposed on a party held in civil contempt generally may serve either or both of two purposes: to coerce the contemnor into complying in the future with the court's order, or to compensate the complainant for losses resulting from the contemnor's past noncompliance." *Perfect Fit Industries, Inc. v. Acme Quilting Co., Inc*., 673 F.2d 53, 56 (2d Cir. 1982). Plaintiff asserts that given SUW and Salt's continued

7

failure to abide by this Court's prior Orders, the proper way to protect Waterkeeper is to: (1) require Salt to issue an unambiguous public statement that he is not the Great Salt Lakekeeper and is not associated with Waterkeeper; and (2) order Salt's imprisonment unless he timely complies with the prior Orders and this order.

More precisely, Plaintiff seeks relief similar to the contempt remedy imposed in *A.V. by Versace, Inc. v. Gianni Versace, S.P.A.*, 2004 WL 691243 (S.D.N.Y 2004), a case that mirrors the facts here. *See also Fax-Express, Inc. v Halt*, 708 F.Supp 649, 653 (E.D. Pa. 1988) (ordering bench warrant for the arrest of the defendant until such time as the defendant complied with the court's injunction against using the plaintiff's trademarks). In *Versace*, the defendant was enjoined from infringing upon certain trademarks and did not comply with the court's order. 2004 WL 691243, at *1. The Court subsequently found the defendant, Alfredo Versace, in contempt for continued violations of the preliminary injunction and gave the defendant explicit instructions on the steps necessary to purge his contempt. *Id*. at *2. The Court also stated that it would order a conditional jail term if he did not comply with the order within 60 days. *Id*. at *3. The defendant again failed to comply and the Court then ordered the defendant's imprisonment. *Id*. Such reasoning applies with equal force here.

Throughout the dispute, defendant Alfredo Versace repeatedly disobeyed and ignored orders of the Court, unconcerned with and without regard to the gravity of the proceedings against him. *Id*. at *4-5. His continued contumacy threatened the plaintiff's, Gianni Versace's, legitimate business interests in its trademarks. *Id*. at *4. Just as important, Alfredo Versace's continued contempt showed a disregard for the authority of the federal judiciary. *Id*. *5.

The Court noted, "[i]t is not a new observation that the ability of a society to order its affairs through the rule of law depend on sound enforcement of the law and respect for the role courts

8

play in this process." *Id*. at *8. The Court afforded defendant Alfredo Versace multiple opportunities to make a reasonable effort to comply with the court's orders but to no avail. *Id*. Given the protracted history of the proceeding, the Court determined that the imposition of further monetary penalties was insufficient to legally coerce Alfredo Versace's compliance. *Id*. While recognizing that civil commitment is a drastic remedy, the Court determined that such sanction was the only remaining permissible threat of penalty to motivate Alfredo Versace to compliance with the Court's orders. Just as in *Versace*, given the protracted history of this proceeding, the documented proof of Defendants SUW, its officers and Salt's failure to comply with this Court's Prior Order's, it is the Court's determination that civil confinement is an appropriate sanction.

Based on the Court's finding that SUW, its officers and Salt have continued to disobey this Court's Prior Orders, SUW and Salt are hereby directed to post the following statement on their or his website, on any related his LinkedIn account, and any other place where he describes his work or employment history:

> Pursuant to the order of the United State District Court, S.D.N.Y., the SPIRIT OF UTAH WILDERNESS, INC., d/b/a GREAT SALT LAKEKEEPER, and or GREAT SALT LAKE WATER KEEPERS, along with its officers, including Jeffrey Salt, have no right to use any of the trademarks of the Waterkeeper Alliance, including the name Great Salt Lakekeeper. I am not the Great Salt Lakekeeper and have had no connection of any kind with Waterkeeper Alliance or any of its member organizations.

Salt is further ordered to post this statement continuously for two (2) years commencing from the date the statement is first posted.

Salt shall pay the fines set forth in the Contempt Order within forty-five (45) days of the date of service of this Order. The amount of these fines are: $500.00, the initial amount set forth in the Contempt Order; $2,100, for three of the discreet violations of the Initial Order (using the Lakekeeper email address, holding himself out as the Great Salt Lakekeeper, and maintaining the

9

greatsaltlakekeeper website); and $100 per day for the period from May 15, 2015 to the date of this Order.

In the event that Salt alleges that he has insufficient funds to pay all of the fines, Salt shall within 45 days of the date of this Order pay that portion of the fine he has the resources to pay and serve on Plaintiff's counsel and file with the Court an affidavit (the "Affidavit") detailing Salt's personal finances in every material respect. The Affidavit shall include, but not be limited to, any and all of Salt's sources of income from January 2016 through the date of the Affidavit, the amount of such income, any assets in which Salt has a direct or indirect interest, any inheritance that Salt has received, and any expenses and liabilities that Salt has. The Affidavit shall also identify where Salt has worked since January 2016, full or part time, any and all of Salt's residences and places of business and, with respect to his residences, who owns the residences and the amount, if any, of the rent Salt pays. Salt shall attach to the Affidavit as exhibits, his federal income tax returns for the years 2016 through 2018, any W-2's, K-1's and 1099's he has received from January 1, 2016 to date, and any bank account and brokerage statements for any bank or brokerage accounts he has an interest in for the period January 1, 2016 to date.

After Salt has filed and served his Affidavit, or once the time for Salt to do has expired, whichever is earlier, Waterkeeper shall have the right to serve written interrogatories and document demands on Salt with respect to the Affidavit, Salt's personal finances, and Salt's compliance with the Orders. Salt shall provide answers to any such interrogatories and responsive documents within 30 days of the date that they are served. Waterkeeper shall have the further right to subpoena Salt and take his sworn testimony on 20 days notice to Salt with respect to the aforementioned matters. Any such examination of Salt shall take place at the office of Watekeeper's counsel or such other location that Waterkeeper designates. If Salt does not fully


comply with the Orders, Waterkeeper is granted leave to move for Salt's imprisonment and any other appropriate relief. This Court may so order Salt's arrest and confinement if the Court finds that Salt has continued to violate the Orders.

## CONCLUSION

For the foregoing reasons, the Court finds that Defendant Spirit of Utah Wilderness, Inc. d/b/a Great Salt Lakekeeper or Great Salt Lake Water, and its officers, including Jeffrey Salt have continued to violate this Court's Prior Orders, and said Defendants are deemed held in Contempt of Court. Plaintiff is directed serve a copy of this order upon Defendant Spirit of Utah Wilderness, Inc. d/b/a Great Salt Lakekeeper or Great Salt Lake Water, and its officers, including Jeffrey Salt by personal service and by certified mail within fifteen days hereof.

Dated: April 5, 2019
      White Plains, New York

SO ORDERED:

NELSON S. ROMÁN
United States District Judge